UNITED STATES DISTRICT COURT
NORTHERN DISTRICT OF INDIANA
SOUTH BEND DIVISION

| | |
|---|---|
| JOHN C. LARAMORE, )<br>)<br>          Plaintiff   ) <br>)<br>      vs.                      ) <br>)<br>HARTFORD LIFE GROUP  )<br>INSURANCE COMPANY,    )<br>)<br>          Defendant  ) | CAUSE NO. 3:06-CV-732 RM |

OPINION and ORDER

John Laramore alleges in his amended complaint that Hartford Life Group Insurance Company violated 29 U.S.C. § 1132(a)(1)(B) by wrongfully denying his claim for long term permanent disability benefits under an insurance policy issued to him through his employer CVS Corporation. Hartford has moved for summary judgment on Mr. Laramore's claims. Mr. Laramore hasn't filed a response, and the time for doing so has passed. For the reasons that follow, the court grants Hartford's motion.

Summary judgment is appropriate when "the pleadings, depositions, answers to the interrogatories, and admissions on file, together with the affidavits, if any, show that there is no genuine issue of material fact and that the moving party is entitled to judgment as a matter of law." FED. R. CIV. P. 56(C). Once a summary judgment motion is filed, the burden shifts to the non-moving party to show through specific evidence that a triable issue of fact remains on issues on

which he bears the burden of proof at trial. Liu v. T & H Machine, Inc., 191 F.3d 790, 796 (7th Cir. 1999). To successfully oppose the motion, Mr. Laramore must present definite, competent evidence in rebuttal. Salvadori v. Franklin School Dist., 293 F.3d 989, 996 (7th Cir. 2002). When no response is filed, summary judgment may be entered against the non-moving party. FED. R. CIV. P. 56(e).

Mr. Laramore worked for 36 years as a pharmacist at CVS Pharmacy in Michigan City, Indiana. In June 2003, he submitted a claim to Hartford for short term disability benefits based on continuing back pain; his request was approved. Mr. Laramore underwent back surgery in October 2003. He then submitted a claim for long-term disability benefits, and Hartford approved that claim for the period December 7, 2003 through March 6, 2004. Hartford advised Mr. Laramore that the long-term benefits were payable for 24 months if he was totally disabled from his regular occupation and the 24-month period benefits would continue after that only if he was totally disabled from any occupation for which he was or became qualified by education, training, or experience.

In February 2004, Mr. Laramore continued to experience tingling and numbness in his feet, and Dr. DeLeeuw, Mr. Laramore's back surgeon, conducted additional tests – an EMG that indicated no evidence of active or chronic lumbrosacral radiculopathy, and a nerve study that showed evidence of peripheral neuropathy. Dr. DeLeeuw advised Mr. Laramore to continue taking Neurontin and suggested that he pursue a claim for total disability from his pharmacist position.

Hartford disability specialist Cris Shank on interviewed Mr. Laramore February 24, 2004. Mr. Laramore reported that he could perform mild chores, such as light sweeping, engage in mild exercise, drive short distances, and walk up and down the stairs in his home. The following month, Hartford Nurse Case Manager Katherine Sims examined Mr. Laramore's disability status. She reviewed doctors' notes from Mr. Laramore's office visits and the EMG test and nerve study results and concluded that Mr. Laramore's condition didn't appear to be sufficiently acute or severe to preclude him from standing or walking. Ms. Sims also determined, based on Mr. Laramore's responses to Cris Shank about his activity level, that Mr. Laramore should be capable of functioning without any restrictions or limitations.

Hartford Nurse Case Manager Doris Hoffman reviewed Mr. Laramore's disability status a month later, and determined that Mr. Laramore's medical records and his self-reported activity level didn't support a finding of total disability. Ms. Hoffman concluded that Mr. Laramore should be capable of light duty activities, with sit/stand options, for an 8-hour day. Noting that Mr. Laramore's employer couldn't accommodate him because CVS pharmacists are required to stand/walk with no sitting options for up to 12 hours per day, Hartford determined Mr. Laramore qualified for continued disability through the 24-month own occupation period.

In August 2004, Dr. DeLeeuw opined in support of Mr. Laramore's Social Security Disability Income application that Mr. Laramore could occasionally

3

(defined as up to one-third of an 8-hour work day) and frequently (defined as between one to two-thirds of an 8-hour work day) lift and/or carry up to 10 pounds; his standing and/or walking was limited to about 6 hours in an 8-hour work day; his sitting wasn't affected; he could occasionally climb, balance, kneel, crouch, crawl, and stoop; he had limited ability to reach all directions, handling, fingering, and feeling; and his seeing, hearing, and speaking were unlimited.

In December 2004, Mr. Laramore told Hartford Claim Specialist Vicky Dillingham that he could drive a car, go grocery shopping, shop with his wife, visit his grandchildren, perform church activities, perform some yard work, mow the lawn on a riding lawn mower, walk his dog, assist with household chores, read, and lift up to 10 pounds.

Hartford Disability Specialist Julie Ann Bird interviewed Mr. Laramore in July 2005. Mr. Laramore reported that he could do yard work, baby-sit his grandchildren (ages 7 months to 7 years), volunteer at his church by answering phones for 4 hours per week, walk a mile 2 to 3 times a week, go to the store, use his home computer, attend to his own personal hygiene needs, and help with household chores. Mr. Laramore hadn't returned to any type of work. Ms. Bird noted that the list of activities Mr. Laramore said he could perform was in conflict with Dr. DeLeeuw's report of permanent restrictions, so Hartford asked Dr. DeLeeuw to clarify Mr. Laramore's ability to perform alternative work and to submit a Functionality Assessment Tool (FAT) assessing Mr. Laramore's ability to perform any occupation. Dr. DeLeeuw responded that Mr. Laramore's restrictions

had not changed from his August 2004 and January 2005 reports; Dr. DeLeeuw, however, didn't fill out the portion of the form asking him to provide medical evidence to support his conclusions. Hartford Claim Specialist Patricia LaBerge contacted Dr. DeLeeuw's office seeking clarification of his response to the FAT. In August 2005, Dr. DeLeeuw submitted a letter recommending that Mr. Laramore not return to his position as a pharmacist. Hartford also contacted Dr. Hagenow, Mr. Laramore's family physician, but Dr. Hagenow said Dr. DeLeeuw should decide what Mr. Laramore should or shouldn't do.

In September 2005, Hartford engaged Dr. Phillip Marion, a specialist in physical medicine and rehabilitation and pain management, to review Mr. Laramore's file. Based on his review of Mr. Laramore's records, Dr. Marion determined that Mr. Laramore was capable of performing full-time work that was primarily sedentary in nature, required occasional lifting up to 10 pounds and maximal lifting of up to 20 pounds, and had permanent restrictions of no significant kneeling, squatting, crouching, or stooping activities. Dr. Marion also spoke with Dr. DeLeeuw, who didn't indicate that Mr. Laramore was incapable of full-time work and, in fact, stated that "it would be a stretch to say that Mr. Laramore was incapable of working as a pharmacist." Dr. Marion concluded that Dr. DeLeeuw's previous opinion that Mr. Laramore was incapable of full-time work was not reasonable or supported by medical evidence.

Hartford retained Dr. Flora Pinder of Pinder Rehabilitation Services, LLC in October 2005 to conduct a labor market survey related to Mr. Laramore's long-

5

term disability claim. Dr. Pinder reviewed Mr. Laramore's records and then contacted some 15 prospective employers and identified several positions in the South Bend, Indiana area for which Mr. Laramore would be qualified, including 3 pharmacist positions that would accommodate his physical restrictions.

Hartford says that based on Mr. Laramore's age, level of education, work history, geographic location, level of function, pre-disability salary, and the findings in his file, the company determined Mr. Laramore could perform various occupations that were available in his geographic area. Hartford denied Mr. Laramore's request for continuing long-term benefits under the "own occupation" standard of the policy as of December 6, 2005.

In March 2006, Mr. Laramore asked Hartford to reconsider its denial of his request for benefits. He informed Hartford that he was taking Neurontin, which caused grogginess and impaired judgment and prevented him from driving and dispensing medication as a pharmacist. Mr. Laramore also submitted letters from Drs. DeLeeuw, Miller, and Cristea, in which each opined that Mr. Laramore couldn't work as a pharmacist.

Hartford contacted Dr. Steven Silver, an independent orthopedist, to review Mr. Laramore's claim and appeal. Dr. Silver reviewed Mr. Laramore's medical records and test results and spoke with Dr. DeLeeuw, who stated that he believed Mr. Laramore could reasonably sit for 8 hours a day and perform sedentary work. Dr. Silver submitted his report in July 2006, concluding that Mr. Laramore could

perform "at least" sedentary work. On July 27, Hartford upheld its denial of Mr. Laramore's request for long-term disability benefits beyond December 6, 2005.

Hartford maintains the policy issued to Mr. Laramore grants the company discretionary authority to determine eligibility for benefits and to interpret the terms and provisions of the policy, as evidenced by the following language:

> The plan administrator and other plan fiduciaries have discretionary authority to determine Your eligibility for and entitlement to benefits under the Policy. The plan administrator has delegated sole discretionary authority to Hartford Life Group Insurance Company to determine Your eligibility for benefits and to interpret the terms and provisions of the plan and any policy issued in connection with it.

Policy No. SR-83130668, p. 21. According to Hartford, its decision to deny Mr. Laramore's long-term disability benefit claim was based on overwhelming evidence – objective medical evidence, information and reports obtained from Mr. Laramore's physicians, opinions of two independent physicians, and Mr. Laramore's self-reported abilities – demonstrating Mr. Laramore's ability to perform sedentary work.

Because the policy language grants discretionary authority to Hartford to interpret the policy's terms and provisions and determine eligibility for benefits, Hartford's decision to deny Mr. Laramore's request for continued benefits is reviewed under an arbitrary and capricious standard. Semien v. Life Ins. Co. of North America, 436 F.3d 805, 810 (7th Cir. 2006). If Hartford "makes an informed judgment and articulates an explanation for it that is satisfactory in light of the relevant facts, *i.e.,* one that makes a 'rational connection' between the issue to be

7

decided, the evidence in the case, the text under consideration, and the conclusion reached, then [Hartford's] decision is final." Exbom v. Central States SE & SW Areas Health & Welfare Fund, 900 F.2d 1138, 1143 (7th Cir. 1990); *see also* Tegtmeier v. Midwest Operating Engineers Pension Trust Fund, 390 F.3d 1040, 1045 (7th Cir. 2004) ("[T]he administrator's decision will only be overturned if it is 'downright unreasonable.'").

Mr. Laramore hasn't argued or presented evidence to establish that Hartford's decision was arbitrary or capricious: Mr. Laramore's medical reports confirm his back surgery, resulting pain, and problems standing for extended periods; the summary judgment record establishes that Hartford considered those restrictions when evaluating Mr. Laramore's claim for disability benefits; and Mr. Laramore has pointed to nothing in the record to suggest that additional limitations should have been, but weren't, considered by Hartford in its evaluation of his eligibility for continued disability benefits. The court concludes that Hartford's determination that Mr. Laramore was able to perform sedentary work was an informed decision, supported by the medical records and other information in his file, and, thus, not arbitrary or capricious.

Hartford Life Group Insurance Company's motion for summary judgment [docket # 27] is GRANTED, and the clerk is directed to enter judgment accordingly.

SO ORDERED.

ENTERED:    December 18, 2007

                     /s/ Robert L. Miller, Jr.
                    Chief Judge
                    United States District Court